# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS WAINSCOTT, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 14-cv-2938 |
| EQUISTAR CHEMICALS, LP, ) | |
| ) | |
| Defendant. ) | Judge Sharon Johnson Coleman |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Thomas Wainscott, Sr., filed a Complaint in the Circuit Court of Cook County on March 21, 2014, which defendant, Equistar Chemicals, LP, removed to federal court. Equistar moves to dismiss the Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the motion is granted.

**Background**

According to the Complaint, Thomas Wainscott ("Wainscott") was employed at Equistar Chemicals LP ("Equistar") from 1977 until his termination on December 12, 2012. Equistar ordered Wainscott to submit to a breath test for the detection of alcohol on December 9, 2012, premised on Equistar's Drug and Alcohol Policy Manual. Equistar maintained an employee manual containing a drug and alcohol policy. Wainscott had a copy of the manual. The Drug and Alcohol Policy ("Policy") requires employees who are reasonably suspected of using, possessing, or being under the influence of alcohol or illegal drugs while on Equistar premises to undergo mandatory testing.

Wainscott alleges on information and belief that the Policy sets forth procedures for the collection and testing of drug and alcohol samples taken from employees and that the collection of specimens will be conducted in private by a trained technician using approved testing devices and

forms. Wainscott further alleges on information and belief that the Policy requires a screening test followed by a confirmation test. If the test results are greater than 0.04% the employee will have failed the test resulting in a violation under the Policy.

On December 9, 2012, at 7:01 pm Wainscott was given an alcohol test resulting in an initial reading of 0.53% and at 7:42 pm Wainscott was tested a second time with a reading of 0.42%. Wainscott alleges that the second test on December 9, 2012, violated the Policy. Equistar terminated Wainscott's employment on December 12, 2012, based on the results of the alcohol tests.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569 n.14 (2007); Put another way, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Fed. R. Civ. P. 8(a)*. On a motion to dismiss, the Court must construe the complaint in the light most favorable to Wainscott and draw all reasonable inferences in his favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

Equistar moves to dismiss Wainscott's entire complaint for failure to state a claim. Wainscott alleges that Equistar's Drug and Alcohol Policy created an express contract that Equistar breached when it terminated Wainscott's employment following his breath alcohol tests on December 9, 2012. Alternatively, Wainscott alleges that the Policy created an implied contract that Equistar breached. In Illinois to state a claim for breach of contract, Wainscott must adequately allege: (1) offer and

acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007).

Generally in Illinois, employment relationships of indefinite duration are terminable "at will" by either party without cause unless facts support the existence of a contract. *E.g.*, *Harden v. Playboy Enterprises, Inc.,* 261 Ill. App. 3d 443, 448-49, 633 N.E.2d 764 (1st Dist. 1993). In *Dudulao v. Saint Mary of Nazareth Hospital Center*, the Illinois Supreme Court confronted for the first time the question of whether an employee handbook could modify an employment-at-will relationship. 115 Ill.2d 482, 488, 505 N.E.2d 314, 106 Ill. Dec. 8 (1987). The court held:

> that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promise contained in the statement, and under traditional principles a valid contract is formed. *Id.* at 490.

When applied to this case, the above principles establish that the Policy does not include a promise that employees will be disciplined only for cause or are entitled to progressive disciplinary procedures. Indeed, the Policy contains no language expressly or impliedly limiting Equistar's power to terminate employees. *See Czarnecki v. Chicago Park District, et al.,* 2000 U.S. Dist. LEXIS 5647, *12-13 (N.D. Ill. Mar. 13, 2000). Instead of conferring any rights, the Policy is a warning to employees about conduct or circumstances that will result in termination. *See Campbell v. City of Champaign*, 940 F.2d 1111, 1112 (7th Cir. 1991). The Policy states in relevant part: "Employees who test at or above the alcohol threshold level of 0.04% and/or test positive for a tested drug will be in violation of this policy." (Dkt. 14-2, at 2). The Policy further states that, "The Company's zero-tolerance rule is reflected in our disciplinary action through termination on the first offense, where allowed by law."

*Id.* at 4. "Initial positive test results for alcohol will be verified with a subsequent test at least 15 minutes after the first test. Upon confirmation of the second test at the alcohol threshold level of 0.04%, site management will perform review of the violation of the of the Company's Drug & Alcohol Policy." *Id.* at 5.

It is undisputed that the Policy does not contain any disclaimers to negate the promises made. Additionally, it is undisputed that Wainscott had the Policy and Equistar provided the Policy to its employees with the intention that they would know and understand the contents and continue working with that understanding. Even if this Court finds that there was a valid and enforceable contract created by the Policy, Wainscott has not adequately pleaded breach of the Policy.

The allegations in the Complaint when viewed in the light most favorable to Wainscott still indicate that he fails to allege a breach of the Policy. Wainscott alleges that Equistar failed to follow its procedures set forth in the Policy prior to his termination. Wainscott alleges that the Policy contemplates a preliminary test and followed by a confirmation test. He argues that the confirmation test was nearly 45 minutes later than the initial test and that it was improperly administered. The Policy however does not provide a maximum time frame for the second test, only that it occur "at least 15 minutes" after the initial test. Additionally, contrary to Wainscott's argument, nothing in the Policy subjects Equistar to liability for the failure of a third party testing facility to follow its own procedures. The Policy specifically states that, "[Testing] Locations should follow their established collection procedures for drug and/or alcohol testing." (Dkt. 14-2, at 3). Thus, the Complaint alleges that Equistar required Wainscott to submit to alcohol testing, his initial test exceeded the threshold level and the second test, administered at least 15 minutes after the first, also exceeded the threshold level. Based on the express language of the Policy, Equistar carried out its warning to Wainscott that violation of the Policy may result in termination on the first offense. Accordingly, Wainscott has effectively pleaded himself out of court.

**Conclusion**

Based on the foregoing discussion, this Court grants Equistar's Motion to Dismiss the Complaint and dismisses the Complaint with prejudice.

IT IS SO ORDERED.

Date:  November 10, 2014

Entered: _____
Sharon Johnson Coleman
United States District Judge